HENRY D. PATEE, Respondent, v. McCABE-BIER-
MAN WAGON COMPANY, Appellant.

St. Louis Court of Appeals, December 23, 1902.

1. **Instruction:** EVIDENCE: ERROR: PRACTICE, TRIAL. An in-
struction is erroneous which is not based on evidence.

2. **Special Damages:** CLAIM: PETITION: PROOF: PLEADING AND
PRACTICE. A claim for special damages, such as in the incurring
of expense to recover property taken, must be specifically assigned
in the petition, in order that the defendant may be reasonably ad-
vised of the case he is called upon to meet.

Appeal from St. Louis City Circuit Court.—*Hon. War-
wick Hough,* Judge.

REVERSED AND REMANDED.

*James K. Hansbrough* for appellant.

Evidence of value of time employed by respond-
ent, in recovering the property, over appellant's ob-
jection, was improperly admitted; because, no such
damages were claimed in the petition. That special
damages, such as this testimony tended to show, must
be specially alleged, is well-settled law in this State,
at least. O'Leary v. Rowan, 31 Mo. 117; State v.
Blackman, 51 Mo. 319; Mellor v. Railway, 105 Mo. 463;
Coontz v. Railway, 115 Mo. 674; Slaughter v. Railroad,
116 Mo. 274; Bristol Mfg. Co. v. Gridley, 28 Conn. 201.

*Geo. E. Egger* for respondent.

(1) There was no error committed by the court in
overruling appellant's objection to evidence offered by
respondent relative to the time lost by respondent (and
its value) in hunting for and recovering his goods.
Brown v. Railroad, 99 Mo. 310; Gerdes v. Christopher,

124 Mo. 347; Kupperschmidt v. Electric Co., 70 Mo. App. 445; Palmer v. Railway, 80 N. W. Rep. (Minn.) 869; Golden v. Clinton, 54 Mo. App. 100; Mitchell v. Bradstreet, 116 Mo. 226.   (2)   Where the instructions in this case taken as a whole, properly present it to the jury, the fact that one of them, standing alone, would be misleading, will not cause a reversal of the judgment. Deweese v. Railway, 54 Mo. App. 476; Sullivan v. Railway, 88 Mo. 169; Owens v. Railway, 95 Mo. 169; Shaw v. Dairy Co., 56 Mo. App. 521; Hughes v. Railroad, 127 Mo. 447.

BARCLAY, J.—Plaintiff sues defendant for the wrongful taking, detention and injuring his property, claiming $500 actual damages and $1,000 punitive or exemplary damages.

The substance of the petition is that defendant, March 6, 1899, took and carried away certain goods and chattels of defendant, described as follows:   One piano, one printing press and a lot of type and printing materials, two gasoline "Beacon burner" lamps, three trunks containing personal effects, one desk, chairs and other personal property of the value of six hundred dollars.

Plaintiff charges that defendant retained two lamps of the value of thirty dollars, injured the other property and put plaintiff to "considerable trouble" to recover the same.

The answer was a general denial.

The case was tried with the aid of a jury.

The facts as developed in evidence on behalf of plaintiff are that all the goods referred to in the petition were returned to plaintiff by defendant except two "Beacon burner" lamps.   Defendant had a chattel mortgage upon a large wagon belonging to plaintiff to secure a loan which matured five or six months before the taking of these goods.   The wagon was large and very heavy; about fourteen feet in length, six feet wide, with curtains drawn down on the sides and back, at the time of taking.

Plaintiff had stored the wagon in a stable in the city of St. Louis in charge of a colored man. The stable was not at or near the residence of the plaintiff. It was simply a place which plaintiff had engaged for the storing of the wagon and contents. It appears that, about March 6, 1899, some of the officers of defendant came to the stable, effected an entrance and hauled the wagon away to the factory of defendant. When plaintiff discovered that fact, which he did March 6, 1899, he demanded the goods of defendant; whereupon they took them out of the wagon and returned them to the stable, everything except the two lamps. The value of the lamps was given in evidence as $30.

According to plaintiff's account the articles were piled around promiscuously on their return and were damaged, particularly the piano, desk, printing press and type.

The testimony of plaintiff tended further to show that the stable where the wagon had been placed by him was closed and no one could get in except the colored man who had it in charge.

The plaintiff concedes that defendant had the right to take possession of the wagon when it was taken. Defendant on the other hand does not claim a lien on the goods which were in the wagon.

Plaintiff complains that he was obliged to expend considerable time going about to discover where the goods were, after they had been taken by the defendant.

During the examination of plaintiff, the court ruled that it was not permissible for defendant under the pleadings to justify the taking of the goods on the ground that it had the right to take the wagon in which they were stored, or to show that they were taken by mistake, even in mitigation of damages, for want of any pleas to that effect.

The court limited the inquiry to the question of whether the defendant took the property, but afterwards ruled that defendant would be permitted to show the circumstances in which the property was taken, "as

bearing on the question of punitive damages only, not as to the right to take the property in the wagon.''

The plaintiff gave evidence tending to prove that the property was returned to him in a damaged condition.

The colored man who had charge of the stable where the wagon was stored testified on behalf of plaintiff that the premises (which had formerly been a livery stable kept by Mr. Chilton) had been given into his care by the agent of the property after Mr. Chilton left and that in consideration of his looking after them he was allowed to keep his own wagon and horse therein. The wagon in question was in the stable when Mr. Chilton left it, and remained until the occurrences which gave rise to this action.

. According to this witness, the front door of the stable was nailed up and there was ''a chain on the back door'' (the meaning of which is left to inference). The stable, however, could be entered through a large open window in the rear, and the wagon could not be taken out without breaking open the front door, which had been nailed up.

The same witness testified that the wagon and the goods therein were ''all right'' a day or two before they were taken; but when they were returned to the stable, a few days later, some of the goods were broken and badly injured.

On defendant's side there was evidence tending to prove that the goods which were taken away in the wagon were returned in good order to the same place as soon as the defendant learned the whereabouts of plaintiff; that defendant had been unable after diligent inquiry for two or three days to find plaintiff before taking the wagon, and that, when the place of storage of the wagon was discovered, no one was found in charge of the wagon, the goods or the stable. One of defendant's officers, after finding the wagon in the stable, testified that he went to a number of places where plaintiff had formerly boarded; heard nothing of him, so he had two persons meet witness early one morning

at the stable and they pushed open the sliding front door wheeled the wagon out, hitched it behind another wagon and took it to defendant's factory.

Three days later witness received a telephone message from plaintiff asking if he had taken plaintiff's wagon, to which witness replied that they had it at the factory. Plaintiff then said: "You have maliciously taken my goods," and witness rejoined, "No, that is not true; we have taken your wagon." Witness then believed they had taken the wagon only, as the curtains were down and nobody had looked into the wagon; that the boards of the wagon were seven feet above the ground, and he had never thought of looking into the wagon. Next day after an interview with plaintiff this witness discovered the goods, announced that they had been taken by mistake, but that he place where they were was not safe and he would do with them as plaintiff might direct. Plaintiff refused to say where he wanted the goods delivered. Witness told him then that they would be sent to the same place unless they got other directions. Plaintiff left witness, and witness immediately engaged the services of the Bollman Bros. Piano Company, which returned the goods to their former place of storage, in good order. Witness testified that all the goods taken were returned and in the same condition; and that the stable was a very unsafe place for storage, as any person could get in at any time as he did.

Other testimony for defendant was given tending to corroborate the material points of the evidence just outlined.

Plaintiff admitted that under the chattel mortgage held by defendant, defendant had the right to take the wagon.

The court, against the objection of defendant, permitted plaintiff as a witness to testify that he had employed a person to help him (plaintiff) search for the property.

Plaintiff was further permitted to show that the value of his own time was "about $25 a day" and that

it took him four days to get the property back into his possession after defendant had taken it.

The objection urged to these points of evidence was that plaintiff had not claimed such damages in his petition. The court overruled the contention.

The foregoing is a sufficient sketch of the facts for the purpose of this review.

The court at the instance of plaintiff gave the following instruction:

"2. The jury are instructed that the measure of damages plaintiff may recover is the amount of the damage or injury done to the property during the time it was in defendant's possession, and in unloading and placing the same when returning it to 1910 Franklin avenue from where it was taken; also the reasonable market value of the two Beacon burner lamps at the time they were taken, if you believe from the evidence said Beacon burner lamps were so taken and not returned; and the value of plaintiff's time and expense incurred, if any, in trying to locate and recover possession of the property, which you may find and believe from the evidence, was taken from plaintiff by the defendant, its agents, servants or employees."

There was a verdict for plaintiff for $250 compensatory damages and $250 punitive damages. A judgment followed for $500.

Defendant after an unavailing motion for new trial appealed in the usual way.

The second instruction given in behalf of the plaintiff, above quoted, permitted the jury to award plaintiff as damages, among other things, "the expense incurred, if any, in trying to locate and recover possession of the property." This was not a correct declaration of law, because there was no evidence of any expense incurred by the plaintiff. Moreover, the petition of plaintiff did not sufficiently state such a claim to permit the introduction of testimony along that line.

"Plaintiff was put to considerable trouble in the recovery of said piano and other personal property aforesaid," is the language of plaintiff's claim in the

particular under discussion. We do not regard that statement as sufficiently definite to warrant the submission to the jury of the issue of expense incurred in recovering the property.

It is familiar law that an instruction should not submit to the jury an issue touching which there is no supporting evidence. It is equally well settled that a claim for special damages (such as in the incurring of expense to recover property taken) must be specifically assigned in the claim which plaintiff makes in a case like this, in order that the defendant may be reasonably advised of the case he is called upon to meet. Timely objections were interposed to the objectionable matter in the trial court and we think the objections were well taken.

For the error aforesaid, the judgment is reversed and the cause remanded. *Bland, P. J.,* and *Goode, J.,* concur.